**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

| | |
|---|---|
| **PAY AS YOU GO, LLC,** | C.A. No. _____ |
| Plaintiff, | |
| v. | **JURY TRIAL DEMANDED** |
| **VERIFONE, INC.,** | **PATENT CASE** |
| Defendant. | |

**ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT**

Plaintiff Pay As You Go, LLC files this Original Complaint for Patent Infringement against VeriFone, Inc., and would respectfully show the Court as follows:

### I.  THE PARTIES

1.      Plaintiff Pay As You Go, LLC ("PAYG" or "Plaintiff") is a Texas limited liability company having an address at 1 East Broward Boulevard Ste 700 Fort Lauderdale, FL 33301.

2.      On information and belief, Defendant VeriFone, Inc. ("VeriFone" or "Defendant") is a Delaware corporation with a regular and established place of business at 300 Park Place Blvd., Suite 100, Clearwater, FL 33759.  Defendant has a registered agent at Corporation Service Company, 1201 Hays St., Tallahassee, FL 32301.

## II.  <u>JURISDICTION AND VENUE</u>

3.     This action arises under the patent laws of the United States, Title 35 of the United States Code.  This Court has subject matter jurisdiction of such action under 28 U.S.C. §§ 1331 and 1338(a).

4.     On information and belief, Defendant is subject to this Court's specific and general personal jurisdiction, pursuant to due process and the Florida Long-Arm Statute, due at least to its business in this forum, including at least a portion of the infringements alleged herein at 300 Park Place Blvd., Suite 100, Clearwater, FL 33759.

5.     Without limitation, on information and belief, Defendant has derived revenues from its infringing acts occurring within Florida.  Further, on information and belief, Defendant is subject to the Court's general jurisdiction, including from regularly doing or soliciting business, engaging in other persistent courses of conduct, and deriving substantial revenue from goods and services provided to persons or entities in Florida.  Further, on information and belief, Defendant is subject to the Court's personal jurisdiction at least due to its sale of products and/or services within Florida.  Defendant has committed such purposeful acts and/or transactions in Florida such that it reasonably should know and expect that it could be sued in this Court as a consequence of such activity.

6.      Venue is proper in this District under 28 U.S.C. § 1400(b). On information and belief, Defendant has a regular and established place of business in Florida and in this District at 300 Park Place Blvd., Suite 100, Clearwater, FL 33759.  On information and belief, from and within this District, Defendant has committed acts of infringement, including at least a portion of the infringements at issue in this case.

7.      For these reasons, personal jurisdiction exists and venue is proper in this Court under 28 U.S.C. § 1400(b).

## III.   THE PATENT-IN-SUIT

8.      Plaintiff incorporates the above paragraphs herein by reference.

9.      On March 14, 2006, United States Patent No. 7,013,127 ("the '127 Patent") was duly and legally issued by the United States Patent and Trademark Office.  A true and correct copy of the '127 Patent is attached hereto as Exhibit A and incorporated herein by reference.

10.     PAYG is the assignee of all right, title, and interest in the '127 patent, including all rights to enforce and prosecute actions for infringement and to collect damages for all relevant times against infringers of the '127 Patent.  Accordingly, PAYG possesses the exclusive right and standing to prosecute the present action for infringement of the '797 Patent by Defendant.

**Background of the Invention**

11.    The '127 Patent relates to telecommunications services and methods that enable a user and/or other responsible party to make payments as the user uses the telecommunication services.

12.    As described in the specification of the '127 Patent, before the invention claimed in the '127 Patent, it was known in the art of telecommunication services to provide calling card accounts to customers. A customer would receive account information in the form of a personal identification number ("PIN") and a toll-free access number that allowed the customer to utilize the account. Those accounts were generally one of two types: (1) a pre-paid account, which was an account with a pre-defined amount of usage paid for in advance by the customer; and (2) a usage-based account, which was an account that is billed on a periodic billing cycle according to usage during the billing period. Pre-paid wireless (cell phone) service was one example of a pre-paid account.

13.    Prior to the '127 Patent, pre-paid wireless service enabled customers to use the convenience of cellular and digital communications by establishing a pre-paid account with a wireless telecommunication vendor. Typically, pre-paid wireless cards, each card corresponding to a wireless services account, were purchased in preset denominations, such as $20, $50 or $100, often from a limited number of locations. Each card provided the user with a specified amount of

wireless calling dollars or minutes. After the initial allocation was exhausted, the user could "recharge" or reload their wireless account, usually by calling a toll-free number, and either talking with a customer service representative or using an automated system to charge additional calling dollars or minutes to a credit card.

14.     These prior art pre-paid systems were burdensome to both the user and the telecommunication service provider. Moreover, these prior art pre-paid systems generally required that the user have a current credit card with an available balance, which created a significant burden in and of itself to certain classes of user, such as individuals who lacked sufficient regular income, individuals with too much existing debt, individuals with poor credit histories, and individuals who lacked and/or were unable to obtain a social security number.

## The Patented Invention

15.     The '127 Patent discloses specific improved methods for effecting payment for pay-as-you-go telecommunication services via a third-party. The claimed method comprises: monitoring a user's use of telecommunication services at regular time intervals; communicating results of the monitoring to the provider of the telecommunication services, who then processes the results and communicates those to the user; and receiving a payment from the user, wherein: (i) the payment is received from the user at a third-party point-of-sale together

with an account identifier, (ii) data indicative of the payment transaction is received sale by the telecommunication services provider from the third party; and (iii) an amount of money equal to the payment is received by the telecommunications services provider from the third-party. The point-of-sale can be a physical location, such as a retail merchant site; a vending machine; and an automated teller machine, or a virtual location, such as a website or application. The payment at the point-of-sale can be made in any acceptable form, including cash, a wire-transfer or bank-transfer, a debit card transaction, and a credit card transaction.

16.     The methods of the claimed invention are an improvement over conventional methods that allow a user to pay as the telecommunication services are being used (*i.e.*, "pay-as-you-go"). Various embodiments of pay-as-you-go methods are illustrated in FIG. 1 and FIG. 2 of the '127 Patent.

17.     Unlike standard mobile phone calling plans that charged a set monthly fee for a specific amount of calls or usage, pay-as-you-go plans only required the user to purchase minutes or usage when they would like to make a call or use the telecommunication services. This was a significant advantage to consumer-users who did not want to be bound by an annual, or even biannual, contract, as well as to consumer-users who did not possess sufficient credit (or credit-worthiness) to qualify for such a contract. This latter group included not

only individuals with bad credit ratings, but also hourly-wage earners, individuals under the age of 18, and individuals unable to obtain a social security number.

18. Pay-as-you-go calling plans also represented an advance to consumer-users who, for whatever reason, wanted to preserve their privacy and so were reluctant to enter into a contract with a telecommunications service provider that would require the disclosure of confidential personal information, like the consumer-user's name, home address, social security number, and the like. In 2020, there were approximately 74 million pay-as-you-go consumer-users in the United States.

19. Pay-as-you-go systems also provide an advantage for telecommunication service providers. With pay-as-you-go systems, use of the telecommunication services can be suspended by the telecommunication services provider upon the available balance in a user's account being fully consumed. And, because use is monitored at regular time intervals, such a suspension can generally be achieved before the user and/or the responsible party accumulates any balance due.

20. However, a significant drawback of prior art pay-as-you-go systems and methods was the inability to add extra time or services after the initial purchase of the phone and time without a credit or debit card. Because of this, many prior art pay-as-you-go systems and methods were almost as bad as

standard mobile phone calling plans for individuals with bad credit ratings, hourly-wage earners, individuals under the age of 18, and individuals without social security numbers. Such systems and methods were also less-than-desirable for individuals who wished to protect their private, personal confidential information and/or preserve their anonymity through cash-only transactions or the like. For all of those different groups of individuals, prior to the invention of the methods claimed in the '127 Patent, the only solution to the problem of running out of time was to purchase another pre-paid phone altogether—a "solution" which could end up being prohibitively expensive in the long term.

21.     Unlike prior art pay-as-you-go systems and methods which required direct payment from a user to the telecommunications service provider via a credit or debit card to add time or data for further use, the methods of the invention claimed in the '127 Patent permit a user to make payments via a third-party point-of-sale site. Such a third-party point-of-sale site may be a physical location, such as a gas station or convenience store equipped with an electronic point-of-sale device, or a virtual location, such as a website or app like PayPal® or Venmo®. While such payments can be made electronically, *e.g.*, via credit card, debit card, check card or any other such means, including on-line banking, they do not have to be made electronically like the prior art systems required. Rather, payments according to the invention claimed in the '127 Patent can also be made in cash, *i.e.*,

the user can make a payment with cash at a designated location, and the amount paid at the designated location will credited to the user's account to cover the services rendered in step 68 of FIG. 2.

22.    To use a designated location 12 to make payment, a user 10 may be issued an account identifier 14, *e.g.*, an individual account number, in step 62 of FIG. 2, that uniquely identifies that user 10. Such an account identifier 14 enables a user 10 to make a payment at the designated location in step 64 of FIG. 2. As noted above, this may be done, *e.g.*, via a point-of-sale terminal 16, where a user's credit card or debit card is "swiped" both to identify the user 10 and to collect payment of a specified amount, or where a user physically inserts cash in the form of paper bills and/or metal coins and enters his/her account identifier via a pin pad or the like. The payment information is then relayed to the telecommunication services provider 18 in step 66 of FIG. 2. The designated location 12 can be any physical or virtual location that processes a credit or debit card and/or can accept cash, *e.g.*, retail stores such as a dry cleaner, a drug store, a supermarket, or a convenience store, etc., and websites and mobile applications like PayPal®.

23.    The inventions claimed in the '127 Patent include methods that enable a user of pay-as-you-go telecommunication services to make payments for those telecommunications services via a third-party point-of-sale.

24.     Prior to the invention claimed in the '127 Patent, users of telecommunications services that did not have a credit card, debit card, and/or linkable bank account were generally unable to use "pay as you go" systems. This requirement presented a problem to users with bad credit ratings, hourly-wage earners, and individuals under the age of 18, as well as individuals who wished to protect their privacy and/or preserve their anonymity.

25.     The methods claimed in the '127 Patent are directed to novel ways of permitting users of telecommunications services to purchase those services on an as-needed basis without needing a credit card, debit card or linkable bank account, and without having to disclose personal identifying information. This represents a significant advantage to users with bad credit ratings, hourly-wage earners, individuals under the age of 18, and individuals without social security numbers, as well as individuals who wished to preserve their anonymity.

26.     The claims of the '127 Patent are not directed to an abstract idea or law of nature.

27.     The claims of the '127 Patent provide solutions to a specific and persistent problems that existed with conventional pay-as-you-go systems and methods, including how could certain users (such as individuals with bad or no credit, hourly-wage earners, individuals under the age of 18, individuals without a social security number, and individuals who wished to maintain their privacy)

continue to use a prepaid phone or similar device once the original time had expired and/or been consumed. The inventions claimed in the '127 Patent provide a real-world solution to that real-world problem.

28.    The invention described in the claims of the '127 Patent enables users to add to a pre-paid phone or similar device after the initial purchase thereof without using a credit or debit card or bank account and without needing to reveal personal confidential information, such as an individual's name or social security number. The patented invention does this by enabling such users to provide payment to the telecommunications service provider through a third-party willing to accept forms of payment other than a credit or debit card, including virtual sites, like PayPal®, and brick-and-mortar businesses, like convenience stores and gas stations.

29.    The claims of the '127 patent recite a particular way of effecting such payments via a third-party point of sale site, which are not generic and do not preempt alternate methods of payment.  Alternative ways exist and are known for a user to affect payment for pay-as-you-go telecommunications services, including the prior art method of submitting a credit or debit card directly to the provider of the telecommunications services.

## IV.  COUNT I
## (PATENT INFRINGEMENT OF UNITED STATES PATENT NO. 7,013,127)

30.    **Direct Infringement.** Upon information and belief, Defendant directly infringed claim 1 of the '127 Patent in Florida, this District. and elsewhere in the United States. As shown below, Defendant performed steps of a pay-as-you-go method for affecting payment of telecommunication services with its usage-based pricing (Pay-per-Usage) plan that satisfied each limitation of claim 1 of the '127 Patent.

31.    Defendant provided a Pay-per-Usage plan that allows merchants to charge customers based on their consumption of products and services, such as calls and messages ("telecommunication services"). The charges ("affecting payment of telecommunication services") are either applied as standalone fees in addition to recurring charges or as overage charges that cost beyond the plan's included usage.



([https://verifone.cloud/docs/2checkout/Documentation/Subscription-](https://verifone.cloud/docs/2checkout/Documentation/Subscription-)

[Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-](https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-)

[Usage](https://...) (red boxes added)).

## Usage-based pricing (Pay-per-Usage)

Last updated: 01-Mar-2024

Rate this article: 👍 👎

## Overview    affecting payment of telecommunication services

Usage billing allows merchants to bill their customers based on how much of the product or service they consume after it was used. Usage can be billed standalone (without recurring charges), on top of recurring charges, or on top of usage already included in the plan (in which case it is known as overage). 2Checkout charges subscribers for usage at the start of a new billing cycle for metered resources consumed during the previous billing cycle. Usage billing is also referred to as metered billing, pay-per-use, and pay-as-you-go.

([https://verifone.cloud/docs/2checkout/Documentation/Subscription-](https://verifone.cloud/docs/2checkout/Documentation/Subscription-)

[Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-](https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-)

[Usage](https://...) (red text and boxes added)).

32.    Defendant performed the step of monitoring a user's use of the telecommunication services at regular time intervals.  For example, Defendant provided a communication platform that charges customers for usage of the services in a monthly ("at regular time intervals") billing cycle. In the billing cycle, the platform charges a recurring monthly fee of $9.99, with additional fees for usage of the calls and messaging services ("monitoring a user's use of the

telecommunication services"). Further, the charges depend on the number of messages sent and calling minutes used in a month.

## How usage billing works

For example, a communication platform charges their clients a monthly recurring fee of $9.99 and additional fees for how many messages and voice calls clients send out from the platform, as follows:

Volume-based usage fees for messages sent:

- $0.1 per message, if the customer sent 1 to 1,000 messages (in total) in a month

- $0.09 per message, if the customer sent 1,001 to 10,000 messages (in total) in a month and

- $0.075 per message, if the customer sent more than 10,000 messages (in total) in a month

Stepped-usage fees for Voice calls made:

- $0.2 per minute for the first 1000 minutes of voice calls made in a month

- $0.15 per minute for the minutes above the first 1000, but under 1500 minutes of voice calls made in a month

- $0.1 per minute for any voice calls made in a month above 1500 minutes

*monitoring a user's use of the telecommunication services at regular time intervals*

(https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-Usage (red text and boxes added)).

33.    Defendant performed the step of communicating results of said monitoring to a telecommunication services provider, wherein said telecommunication services provider processes said results and communicates processed results to said user.  For example, when the customer subscribes to the Pay-per-Usage plan, a monthly bill ("processed results") is generated at the start

of the new billing cycle based on the customer's usage of calling and messaging services ("results of said monitoring") during the previous cycle. Further, the bill is uploaded to the '2 Checkout dashboard' associated with the customer ("communicates processed results to said user"). Therefore, it would be apparent to a person having ordinary skill in the art that the usage data is communicated to a telecommunication services provider, which processes the data and generates the bill.



([https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-Usage](https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-Usage) (red text and boxes added)).

## How usage billing works

For example, a communication platform charges their clients a monthly recurring fee of $9.99 and additional fees for how many messages and voice calls clients send out from the platform, as follows:

Volume-based usage fees for messages sent:

- $0.1 per message, if the customer sent 1 to 1,000 messages (in total) in a month

- $0.09 per message, if the customer sent 1,001 to 10,000 messages (in total) in a month and

- $0.075 per message, if the customer sent more than 10,000 messages (in total) in a month

results of said monitoring

Stepped-usage fees for Voice calls made:

- $0.2 per minute for the first 1000 minutes of voice calls made in a month

- $0.15 per minute for the minutes above the first 1000, but under 1500 minutes of voice calls made in a month

- $0.1 per minute for any voice calls made in a month above 1500 minutes

(https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/04Usage-based-pricing-Pay-per-Usage (red text and boxes added)).

34. Defendant performs a step of receiving a payment from the user, the payment obtained from a payment transaction wherein: a payment is received from the user at a point-of-sale together with an account identifier, data indicative of the payment transaction is received from the point-of-sale by the telecommunication services provider, and an amount of money equal to the amount of payment is received from a point-of-sale proprietor by the telecommunication services provider. For example, after the monthly bill is

generated and uploaded on the '2 Checkout dashboard' ("an account identifier"), the customer pays the bill ("receiving a payment from the user") for the availed services through multiple payment methods such as Debit/Credit card, Digital wallets, Online banking, and Offline banking ("payment obtained from a payment transaction"). Therefore, upon information and belief, the payment for the bill is received by the telecommunication services provider from the payment ("point-of-sale") proprietor.

# Overview

Account identifier

2Checkout calculates recurring charges for your subscription plans based on your pricing setups. You have the option to change recurring charges and modify the costs incurred by subscribers when renewing their subscriptions.

(https://verifone.cloud/docs/2checkout/Documentation/Subscription-Billing/02Subscription-Packaging-and-Pricing/03Recurring-billing-charges   (red text and boxes added)).

# Overview

Leverage 2Checkout's Monetization Platform to sell in over 200 countries and territories, in over 45 payment methods and 100 billing currencies.

(https://verifone.cloud/docs/2checkout/Documentation/03Billing-and-payments/Payment-methods (red text and boxes added)).

# Online Payment Methods

## Credit/Debit Cards (With/Without Installments) Payment Methods

Expand table ↗

| Payment method | Availability | Renewal support/recurrent billing | Curre |
| --- | --- | --- | --- |
| Visa* | Worldwide | Yes | All fro |
| Visa Electron* (debit card) | Worldwide | No | All fro |
| MasterCard* | Worldwide | Yes | All fro |
| Maestro* | Worldwide | No | All fro |
| Eurocard (Mastercard) | Scandinavia, Baltic countries | Yes | EUR |

(https://verifone.cloud/docs/2checkout/Documentation/03Billing-and-payments/Payment-methods (red text and boxes added)).

## Digital Wallets Payment Methods

Expand table ↗

| Payment method | Availability | Renewal support/recurrent billing | Currencies |
|---|---|---|---|
| PayPal* | Worldwide | Yes | All from list |
| PayPal Express* | Worldwide | Yes | All from list |
| Alipay | China, Hong Kong, Taiwan | Yes | CNY, USD |
| Apple Pay | Check here the list of countries where Apple Pay is available. | Yes | All from list |
| MobilePay | Denmark | No | DKK |
| Vipps | Norway | No | NOK |
| Webmoney | All countries and | No | EUR |

(https://verifone.cloud/docs/2checkout/Documentation/03Billing-and-payments/Payment-methods (red text and boxes added)).

## Online Banking Payment Methods

Expand table ↗

| Payment method | Availability | Renewal support/recurrent billing | Currencies |
|---|---|---|---|
| SOFORT Banking | Germany, Austria, Belgium, Switzerland, The Netherlands | Auto-renewal supported through Direct Debit. | EUR |
| iDEAL | The Netherlands | Auto-renewal supported through Direct Debit. | EUR |
| OP-Pohjola | Finland | No | EUR |
| Nordea | Finland | No | EUR |
| Danske | Finland | No | EUR |
| Trustly | Austria, Belgium, Bulgaria, Croatia, Cyprus, Czech Republic, Denmark, | No | CZK, DKK, EUR, GBP, HUF, PLN, RON, SEK |

(https://verifone.cloud/docs/2checkout/Documentation/03Billing-and-payments/Payment-methods (red text and boxes added)).

35.    Plaintiff has been damaged as a result of Defendant's infringing conduct.  Defendant is thus liable to Plaintiff for damages in an amount that adequately compensates Plaintiff for such infringement of the '127 Patent, *i.e.*, in an amount that by law cannot be less than would constitute a reasonable royalty for the use of the patented technology, together with interest and costs as fixed by this Court under 35 U.S.C. § 284.

36.     The claims of the '127 Patent are method claims to which the marking requirements are not applicable.  Plaintiff has therefore complied with the marking statute.

## V.   <u>JURY DEMAND</u>

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

## VI.   <u>PRAYER FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests that the Court find in its favor and against Defendant, and that the Court grant Plaintiff the following relief:

a.     Judgment that claim 1 of United States Patent No. 7,013,127 has been infringed directly and indirectly, either literally and/or under the doctrine of equivalents, by Defendant;

b.     Judgment that Defendant account for and pay to Plaintiff all damages to and costs incurred by Plaintiff because of Defendant's infringing activities and other conduct complained of herein, and an accounting of all infringements and damages not presented at trial;

c.     That Plaintiff be granted pre-judgment and post-judgment interest on the damages caused by Defendant's infringing activities and other conduct complained of herein; and

d.     That Plaintiff be granted such other and further relief as the Court may deem just and proper under the circumstances.

March 18, 2025                                 /s/Barbra Anne Stern
                                               Barbra A. Stern, Esquire
                                               Florida Bar No.: 526576
                                               barbra@sternlawoffice.com
                                               Law Offices of Barbra Stern, PA
                                               808 E. Las Olas Blvd, Suite 102
                                               Ft. Lauderdale, Florida 33301
                                               Telephone:  (954) 743-4710
                                               *Attorneys for Plaintiff*
                                               *Pay As You Go, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 18, 2025, I electronically filed the above documents with the Clerk of Court using CM/ECF which will send electronic notification of such filings to all registered counsel.

<u>/s/Barbra A. Stern</u>