UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PAY AS YOU GO, LLC,

      Plaintiff,

v.                                                    Case No:  8:25-cv-00660-JLB-CPT

VERIFONE, INC.,

      Defendant.

                                  /

## ORDER

Before the Court is Defendant Verifone, Inc.'s Motion to Dismiss Plaintiff Pay As You Go, LLC's Amended Complaint.[1]  (Doc. 27).  After careful review of the Complaint, the parties' briefing, and the entire record, the Court **GRANTS** Defendant's Motion to Dismiss **in part**.

## BACKGROUND

This case concerns whether Defendant directly infringed on Plaintiff's patent. (Doc. 21).  In 2006, the United States Patent and Trademark Office issued Plaintiff United States Patent No. 7,013,127 ("the '127 Patent").  (*Id.* at ¶ 9; Doc. 21-1).  The '127 Patent relates to telecommunication services and methods that enable users to pay as they use the services (*i.e.*, pay-as-you-go).  (Doc. 21 at ¶ 11).  In other words, rather than using a prepaid account, which users must pay for in advance, or a

---

[1] This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States" and 28 U.S.C. § 1338, which provides that "district courts shall original jurisdiction of any civil action arising under any Act of Congress relating to patents," respectively.

usage-based account, which is billed periodically based on usage, users can purchase telecommunication service only when they want to use it. (*Id.* at ¶¶ 11–18). This system also provides users with telecommunication services without entering into a contract or meeting other requirements, such as obtaining a certain credit score, disclosing a social security number, or being a certain age. (*Id.* at ¶ 18).

At issue now is Claim 1 of the '127 Patent, which provides:

**1.** A method for affecting payment of telecommunication services, comprising:
  **monitoring** a user's use of the telecommunication services at regular time intervals,
  **communicating** results of said monitoring to a telecommunication services provider, wherein said telecommunication services provider processes said results and communicates processed results to said user; and
  **receiving** a payment from the user, the payment obtained from a payment transaction wherein: a payment is received from the user at a point-of-sale together with an account identifier, data indicative of the payment transaction is received from the point-of-sale by the telecommunication services provider, and an amount of money equal to the amount of payment is received from a point-of-sale proprietor by the telecommunication services provider.

(Doc. 21-1 at 8) (emphasis added). Plaintiff alleges that, prior to the '127 Patent, it was not routine, well-known, or conventional to use these limitations. (Doc. 21 at ¶ 37). Plaintiff also alleges that Defendant has performed each limitation of Claim 1, thus directly infringing on the '127 Patent. (*Id.* at ¶ 47).

Specifically, Plaintiff alleges that Defendant provides a monetization platform, 2Checkout, which enables merchants like Defendant to offer and sell their telecommunication services on a pay-as-you-go model. (*Id.*). According to Plaintiff,

2

Defendant performed the step of monitoring a customer's usage of the telecommunication services at regular intervals by, for example, providing customers a platform that charges them for usage on a monthly basis. (*Id.* at ¶¶ 49–50). Defendant then performed the step of communicating the results to a telecommunication services provider, which processes and shares the results with the user through an invoice. (*Id.* at ¶ 51). Finally, Defendant performed the step of receiving payment from the user at a point-of-sale together with an account identifier, data indicative of the payment transaction is received from the point-of-sale by the telecommunication services provider, and an amount equal to the payment is provided from the point-of-sale to the telecommunication services provider. (*Id.* at ¶ 52).

Plaintiff sued Defendant, alleging patent infringement. (Doc. 1). Defendant now moves to dismiss Plaintiff's Amended Complaint. (Doc. 27). Plaintiff responded. (Doc. 32).

## LEGAL STANDARD

To avoid dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to

the plaintiff." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999) (citing *Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998)).  Thus, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

## DISCUSSION

Defendant moves to dismiss the Amended Complaint, arguing that the '127 Patent is patent-ineligible under 35 U.S.C. § 101 or, alternatively, that the Amended Complaint fails to state a patent infringement claim.  (*See generally* Doc. 27).

### I.   **Whether Patent '127 is Patent-Eligible Under 35 U.S.C. § 101**.

Patent-eligible subject matter is "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . ." 35 U.S.C. § 101.  "[T]his provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 569 U.S. 576, 589 (2013) (quoting *Mayo Collaborative Servs. v. Prometheus Lab'ys, Inc.*, 566 U.S. 66, 70 (2012) (citation modified)).

"[T]he Supreme Court set forth a two-step analytical framework to identify patents that, in essence, claim nothing more than abstract ideas." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1347 (Fed. Cir. 2016) (citing *Mayo*, 566 U.S. at 77–78).  The court must first determine "whether the

4

claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. v. CLS Bank Int'l*, 573 U.S. 208, 218 (2014).  If so, the court must then "examine the elements of the claim to determine whether it contains an 'inventive concept' sufficient to 'transform' the claimed abstract idea into a patent-eligible application." *Id.* at 221 (quoting *Mayo*, 566 U.S. at 72, 79).  "This inventive concept must do more than simply recite 'well-understood, routine, conventional activity.'" *FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1093 (Fed. Cir. 2016) (quoting *Mayo*, 566 U.S. at 79).

### A. Whether Claim 1 is Directed to a Patent-Eligible Concept.

Under *Alice* step one, the Court "look[s] to whether the claims in the patent focus on a specific means or method, or are instead directed to a result or effect that itself is the abstract idea and merely invokes generic processes and machinery." *Two-Way Media Ltd. v. Comcast Cable Commc'ns, LLC*, 874 F.3d 1329, 1337 (Fed. Cir. 2017) (citation omitted).

The Court finds that Claim 1 of the '127 Patent is directed to an abstract concept.  Claim 1 requires "monitoring a user's use of the telecommunication service," "communicating results of said monitoring to a telecommunication services provider," and "receiving a payment from the user . . . at a point-of-sale. . . ." (Doc. 21-1 at 8).  Claim 1 is "clearly focused on the combination of . . . abstract-idea processes." *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1354 (Fed. Cir. 2016) (finding a claim abstract where it was "a process of gathering and analyzing information of a specified content, then displaying the results, and not any

particular assertedly inventive technology for performing those functions"); *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017) ("[T]he abstract idea exception to patent eligibility disallows the patenting of basic concepts, such as processing information through a clearinghouse, because no entity is entitled to wholly preempt such concepts.") (citation and internal quotation marks omitted) (cleaned up); *Two-Way Media*, 874 F.3d at 1337 (holding that a claim was abstract where it "requires the functional results of 'converting,' 'routing,' 'controlling,' 'monitoring,' and 'accumulating records,' but does not sufficiently describe how to achieve these results in a non-abstract way"); *Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1355 (Fed. Cir. 2021) (explaining that the claims at issue were abstract where they "d[id] not recite any improvements to . . . devices or technological solutions . . . . Rather, . . . the claims are directed to the routine use of biometric information, mobile devices, onetime variable tokens, and/or multiple devices to authenticate a person . . .") (citation and internal quotation marks omitted).

Plaintiff argues that Claim 1's limitations offer sufficient specificity, such as requiring monitoring "at regular time intervals," requiring payment at a point-of-sale rather than to a telecommunication service provider, requiring only an account identifier, and requiring communication between the point-of-sale proprietor and the telecommunication services provider. (Doc. 32 at 10–11) (quoting Doc. 21-1 at 8). The Court is not persuaded. In support of its contention that Claim 1 uses limitations to achieve an improved technological result, Plaintiff cites to *McRO, Inc.*

6

*v. Bandai Namco Games Am. Inc.*, 837 F.3d 1299, 1313 (Fed. Cir. 2016), *Contour IP Holding LLC v. GoPro, Inc.*, 113 F.4th 1373, 1380 (Fed. Cir. 2024) *PowerBlock Holdings, Inc. v. iFit, Inc.*, 146 F.4th 1366, 1372 (Fed. Cir. 2025).  Each is distinguishable.

The *McRO* Court held the claim at issue, describing a method to automatically animate lip synchronization and facial expression of animated characters, was not abstract where it "set out *meaningful requirements*," defining "a morph weight set stream as a function of phoneme sequence and times associated with said phoneme sequence" and "applying said first set of rules to each sub-sequence . . . of timed phonemes."  *McRO*, 837 F.3d at 1303–06, 1313 (emphasis added) (citation and internal quotation marks omitted).

In *PowerBlock Holdings*, the Court similarly held that the claim for a weight selection and adjustment system for a selectorized dumbbell was sufficiently specific where it was limited to a specific type of dumbbell with nested weight plates and an electric motor operatively connected to the selector.  *PowerBlock Holdings*, 146 F.4th at 1369, 1371–72.  Thus, the Court was not concerned that the claim lacked "meaningful limitations on how to accomplish automated weight stacking such that it would 'preempt any weight-selection and adjustment system.'"  *Id.* at 1371–72.

Finally, *Contour*, which dealt with a claim for a portable, point-of-view ("POV") camera, was likewise not concerned that the claim was described "at such a high level of abstraction and untethered from the language of the claims all but ensures that the exceptions to § 101 swallow the rule" because the claim would

7

allow the POV camera "to operate differently than it otherwise could . . . by both recording multiple video streams in parallel and wirelessly transferring only one video stream, a lower quality stream, to a remote device." *Contour*, 113 F.4th at 1375, 1379–80.

Unlike the claims in those cases, Claim 1 here is described at a high level of abstraction such that it may preempt similar services. (*See* Doc. 21-1 at 8). For instance, the Amended Complaint distinguishes the pay-as-you-go system from the usage-based system, describing pay-as-you-go as allowing the user to pay only when the user utilizes the telecommunication services, and the usage-based system as one that is billed periodically based on usage. (Doc. 21 at ¶¶ 11–18). Claim 1 is partly comprised of "monitoring a user's use of the telecommunication services at regular time intervals" and "communicating results of said monitoring to a telecommunications provider," which provides the result to the user. (Doc. 21-1 at 8). Plaintiff's claim of direct infringement alleges that Defendant is performing monitoring usage at regular intervals through invoices to users and communicates the results by notifying them of their monthly bill and listing their usage for the month. (Doc. 21 at ¶ 51). As Defendant notes in passing, Plaintiff points to a usage-based system and uses the broad language of Claim 1 to allege infringement. (Doc. 27 at 17). Accordingly, the Court finds that Claim 1 is abstract.

### B. Whether Claim 1 Contains an Inventive Concept.

The Court next turns to step two of *Alice* to determine whether Claim 1 of the '127 Patent contains an "inventive concept," either "individually [or] as an ordered

8

combination." *Alice*, 573 U.S. at 217, 221. "An inventive concept reflects something more than the application of an abstract idea using 'well-understood, routine, and conventional activities previously known to the industry.'" *Cellspin Soft, Inc. v. Fitbit, Inc.*, 927 F.3d 1306, 1316 (Fed. Cir. 2019) (quoting *Aatrix Software, Inc. v. Green Shades Software, Inc.*, 882 F.3d 1121, 1128 (Fed. Cir. 2018)). "It must be '*enough*' to transform an abstract idea into a patent-eligible invention." *Id.* (quoting *Alice*, 573 U.S. at 226).

Defendant argues that Claim 1 is not an inventive concept because it requires nothing more than generic web servers, point-of-sale devices, and computers for payment transactions. (Doc. 27 at 18–19) (citing *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) ("[A] computer receives and sends the information over a network—with no further specification—is not even arguably inventive.")). The Court agrees to the extent that the individual limitations are not inventive.

Plaintiff's Amended Complaint alleges that payment received from the user at point-of-sale with an account identifier then received by the telecommunication services provider is inventive because "it creates a new payment pathway that leverages existing retail infrastructure for telecommunication services" and "requires the establishment of a communication pathway between the retail point-of-sale system and the telecommunication services provider's billing infrastructure." (Doc. 21 at ¶¶ 38–39). Plaintiff further alleges that the limitation requiring an amount equal to the payment received from a point-of-sale to the telecommunication services provider is inventive because it "establishes a unique

9

payment architecture for telecommunication systems." (*Id.* at ¶ 42).  However artfully pleaded, the limitations do not—on their own—represent "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof . . . ."  *See* 35 U.S.C. § 101.

Defendant makes no argument, however, that Claim 1 is not inventive as an ordered combination.  (*See* Doc. 27).  Indeed, Plaintiff alleges that the ordered combination of the limitations is inventive because "interval-based monitoring represents an unconventional technical solution to the problem of real-time billing and account management" and "implements stream processing with continuous data flow" to bill users.  (Doc. 21 at ¶¶ 43–44).  Additionally, the pay-as-you-go system allows "[c]all charge information associated with the use of the telecommunication services [to be] virtually simultaneously accessible by the user when the use of the services is terminated."  (*Id.* at ¶ 44) (citing Doc. 21-1 at 6).  Plaintiff alleges that this is unlike prior art systems' use of traditional billing structures that "employ batch processing models with monthly data aggregation." (*Id.*).  Further distinguishing pay-as-you-go from prior art systems, Plaintiff alleges that before the '127 Patent, customers were limited to certain services, such as pre-paid accounts, which would need to be recharged in preset amounts (e.g., $20, $50, $100).  (*Id.* at ¶¶ 14–15).  Such pre-paid systems, Plaintiff alleges, were burdensome to users without a credit card, good credit, or a social security number.  (*Id.* at ¶ 15).

"Whether the claim elements or the claimed combination are well-understood, routine, conventional is a question of fact."  *Aatrix*, 882 F.3d at 1128.

10

"[P]atentees who adequately allege their claims contain inventive concepts survive a § 101 eligibility analysis under Rule 12(b)(6)." *Id.* at 1126–28 (finding "no proper basis for reject[ing] [the] allegations as a factual matter" where the complaint included "concrete allegations . . . that individual elements and the claimed combination are not well-understood, routine, or conventional activity"). Here, "[a]ccepting the allegations stated above as true, [the Court] cannot conclude that the asserted claims lack an inventive concept." *Cellspin Soft*, 927 F.3d at 1317–18 (holding that the claim at issue may be inventive where it "made specific, plausible factual allegations about why aspects of its claimed inventions were not conventional"). To be sure, "an inventive concept can be found in the non-conventional and non-generic arrangement of known, conventional pieces." *Bascom Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1350 (Fed. Cir. 2016) (holding that the combined limitations "may be read to improve an existing technological process") (citation and internal quotation marks omitted).

## II.  Whether the Amended Complaint States a Claim for Patent Infringement.

Defendant makes several arguments that, even if Claim 1 is patent-eligible, the Amended Complaint does not sufficiently state a claim for patent infringement. (Doc. 27 at 21–25).

First, Defendant argues that the Amended Complaint does not allege that Defendant performed the steps required of a telecommunication services provider under Claim 1. (Doc. 27 at 21–22). "[F]or a party to be liable for direct patent infringement under 35 U.S.C. § 271(a), that party must commit all the acts

necessary to infringe the patent, either personally or vicariously." *Aristocrat Techs. Australia Pty Ltd. v. Int'l Game Tech.*, 709 F.3d 1348, 1362 (Fed. Cir. 2013) (citation omitted). Specifically, Claim 1 requires that "said telecommunication services provider processes said results and communicates processed results to said user." (Doc. 21-1 at 8). Upon review of the Amended Complaint, Plaintiff does not allege that Defendant itself processes the results or communicates those results to the user. Plaintiff does, however, allege that Defendant provides the 2Checkout platform, allowing telecommunication service providers to utilize pay-as-you-go services. (Doc. 21 at ¶ 47). Plaintiff then alleges that Defendant communicates the results through a monthly bill. (*Id.* at ¶ 51). Thus, taking the allegations of the Amended Complaint as true, it sufficiently alleges that Defendant performed this step of Claim 1 vicarioulsy through 2Checkout.

Second, Defendant argues that Plaintiff's allegation that Defendant monitors the user's use of the telecommunication services at regular intervals is facially implausible. (Doc. 27 at 22–23). Because Defendant provides an application programming interface that allows the telecommunication services provider to provide the usage results to Defendant, it argues that it is the telecommunications provider that monitors, rather than Defendant. (*Id.*). But, accepting Plaintiff's allegations as true, Claim 1 does not require that to perform the step of "monitoring" means to collect the data first or that receipt of that data is not also "monitoring." (Doc. 32 at 21; *see* Doc. 21-1 at 8; *see also* Doc. 21 at ¶¶ 49–50). Therefore, this step of Claim 1 is sufficiently alleged at this stage of litigation.

12

Defendant next argues that the Amended Complaint's allegation that it "communicat[es] results of said monitoring to a telecommunication services provider" is facially implausible.  (Doc. 21 at 23–25).  The Court agrees.  Claim 1 requires monitoring a user's use of the telecommunication services and then "communicating results of said monitoring to a telecommunication services provider, wherein [the provider] processes said results and communicates processed results to said user[.]"  (Doc. 21-1 at 8).  Defendant contends that Plaintiff has not alleged that Defendant provides the monitored results to a telecommunications services provider.  (Doc. 27 at 23–24).  To be sure, such an allegation is counter to Plaintiff's other allegation that Defendant monitors usage through data it receives *from* the telecommunication services provider.  (*See* Doc. 21 at ¶¶ 49–50; *see also* Doc. 32 at 21).

Plaintiff attempts to rebut Defendant's argument, explaining that the Amended Complaint alleges "[t]he results of the monitoring are provided *back* to the telecommunication service provider" after the results are provided to the user through the monthly invoice.  (Doc. 32 at 21–22) (citing Doc. 21 at ¶ 51) (emphasis added).  But that is not what is required from Claim 1.  Rather, Claim 1 lays out a specific combination of ordered steps.  The communication step specifies that the monitoring results are communicated to a telecommunication services provider, where they are processed and *then* communicated to the user.  (Doc. 21-1 at 8).  Plaintiff emphasizes the importance of these ordered steps in its Amended Complaint, explaining that the communication step "is a technical limitation

13

requiring a specific technical data flow and processing architecture," which "is not generic communication but a defined technical flow: usage data → provider → processing → user notification." (Doc. 21 at ¶ 28).  Under these facts, Plaintiff has not sufficiently alleged that Defendant performed the step of communicating the results of monitoring to the telecommunication services provider.  *See, e.g.*, *Rothschild Connected Devices Innovations, LLC v. Coca-Cola Co.*, No. 2024-1253, 2025 WL 2964300, at *2 (Fed. Cir. Oct. 21, 2025) (holding that the communication step for the claim at issue must be performed in order where the language was specifically configured to transmit to a server and from a server).

Defendant last argues that the Amended Complaint does not allege that it performs the last step of Claim 1, "receiving payment from the user . . . at a point-of-sale . . . ." (Doc. 27 at 24–25) (quoting Doc. 21-1 at 8).  In particular, Defendant takes issue with Plaintiff's allegation that Defendant receives payment from users utilizing billing through 2Checkout.  (*Id.* at 24).  But the Amended Complaint alleges that Defendant receives the payment amount through 2Checkout and that Defendant receives that amount from 2Checkout.  (Doc. 21 at ¶¶ 52–54; Doc. 32 at 21–22).  Therefore, Plaintiff has adequately alleged that Defendant performed the last step of Claim 1.

In sum, Plaintiff's Amended Complaint does not provide sufficient allegations that Defendant performed the step of communicating monitoring results to a telecommunication services provider, as required by Claim 1.  The Court will provide Plaintiff leave to file a second amended complaint within 21 days of the date

14

of this Order to cure the deficiencies. *See* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave when justice so requires.").

**CONCLUSION**

Accordingly, it is **ORDERED**:

1. Defendant's Motion to Dismiss (Doc. 27) is **GRANTED in part and DENIED in part**.

2. Plaintiff's Amended Complaint (Doc. 21) is **DISMISSED without prejudice**.

3. Plaintiff shall have leave to file a second amended complaint. Should Plaintiff do so, Plaintiff must file such within twenty-one (21) days from the date of this Order. No additional claims may be raised in any second amended complaint. Failure to file a second amended complaint may result in this Court dismissing the case without further notice.

**ORDERED** in Tampa, Florida, on March 30, 2026.

JOHN L. BADALAMENTI
UNITED STATES DISTRICT JUDGE

15